# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EUGENE L. CHERRY,<br><br>                        Plaintiff,<br><br>v.<br><br>JOHN HUSZ, CAPTAIN BAUSCH,<br>C.O. II DAVID JOHNSTON, and<br>JOHN DOES and JANE DOES<br>employed by the Wisconsin DOC<br>as "Chiefs,"<br><br>                        Defendants. | Case No. 14-CV-1539-JPS<br><br><br><br><br>ORDER |

Before the Court is the defendants' motion to dismiss, which is made pursuant to Fed. R. Civ. P. 12(b)(6) (Docket #20);[1] the motion was fully briefed on May 8, 2015 (*See* Docket #24).[2] The defendants argue that the plaintiff's claims against Defendants David Johnston ("Officer Johnston"), Captain Bausch, and John Husz (" Warden Husz") should be dismissed for failure to state a claim. (Docket #21 at 7-9). And, the defendants argue that the claims against the John and Jane Doe DOC "Chiefs" (hereinafter "DOC Chiefs") should be dismissed because those individuals are entitled to absolute immunity. *Id.* at 6-7.

---

[1] The defendants' motion is docketed and titled a "Motion for Judgment on the Pleadings Based on Claim Preclusion" (*see* Docket #20, #21), but the defendants' brief in support of the motion never raises claim preclusion as a basis for dismissal of the plaintiff's claims. (*See* Docket #21). Thus, the Court will elevate substance over form and treat the motion as one brought under Rule 12(b)(6).

[2] The plaintiff also filed a surreply to the defendant's reply brief on May 12, 2015. (Docket #25).

The Court will grant the defendant's motion to dismiss, in full, for the reasons outlined below.

1.  BACKGROUND[3]

On January 19, 2010, the plaintiff, Eugene Cherry ("Cherry") was placed on probation after spending time in the Wisconsin Secure Program Facility ("WSPF"). (Docket #22 at 1). Later that year, on September 3, 2010 (at 1:04 a.m.), the plaintiff sent Carrie Johnston, a former correctional officer and the wife of Officer Johnston (also a correctional officer), a message on Facebook stating "hello." (Docket #1 at 2); (*see also* Docket #22-1 at 1) (printout of the message from Carrie Johnston's Facebook page showing that the message the plaintiff sent states: "Seen ur facebook page & just thought I'd say hello. :)").[4]

In an incident report dated September 3, 2010, at 10:30 a.m. (and signed on September 6, 2010), Officer Johnston recounted what had occurred and how the message made him and his wife feel (the message made them feel uneasy), and delivered the report to his supervising officer, Captain Bausch. (Docket #22-1 at 2-4); (Docket #1 at 3-4). Bausch in turn contacted the

---

[3]The Court assumes the truth of the plaintiff's allegations for purposes of the defendant's motion to dismiss. The documents the Court cites and quotes in its discussion—*i.e.* the incident report and investigation report— were attached to the plaintiff's brief in opposition to the defendant's motion to dismiss. (*See* Docket #22-1). Because these documents were referred to in the plaintiff's complaint, the defendant's motion to dismiss need not be converted into one for summary judgment. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *accord Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[4]The plaintiff states that he sent the message to Carrie Johnston on September 13, 2010, but most of the documentation he submitted shows that he sent the message on September 3, 2010. (*See* Docket #22-1 at 1-4); *but see id.* at 5 (referring to the incident as occurring "[o]n or about 9/5/10").

plaintiff's parole agent, Azael H. Broadhead, on September 13, 2010. (Docket #22-1 at 5); (Docket #1 at 4). The "Violation Investigation Report" filed by the probation agent and his supervisor, states in the "description":

> On 9/13/10, Lieutenant Bausch contacted the agent to inform him that Eugene Cherry attempted to contact Correctional Officer D. Johnston's wife, C. Johnston, via Facebook. C. Johnston is a former correctional officer and supervised the offender in the institution during Mr. Cherry's incarceration. Due to the offender's institutional history of serious misconduct at [WSPF], particularly sexual deviance, his Facebook attempt caused the Johnston family to fear for their safety. Bausch emailed the Incident Report to the agent on 9/14/10, including Officer Johnston's statement and a printout of the Facebook email.

(Docket #22-1 at 5).

Thereafter, on September 21, 2010, the plaintiff was taken into custody by his probation officer during his weekly visit. (Docket #1 at 2); (Docket #1-1 at 1) ("Because of Mr. Cherry's criminal history and sexual misconduct as an inmate, WSPF staff took every precaution. Mr. Cherry was placed in custody on 9/21/10."); (Docket #22-1 at 6) (noting custody start date as 9/21/10). He was handcuffed and told that the DOC Chiefs in the DOC headquarters in Madison, Wisconsin "'ordered' that he be taken into custody for violation of probation by communicating via '[F]acebook' with a correctional officer." *Id.* at 3. The plaintiff was confined in the Milwaukee Secure Detention Facility ("MSDF") until September 27, 2010. *Id.* While there, the plaintiff's statement on the incident was taken; the investigation report states (under "Offender Verbal Statement"):

> Eugene Cherry admitted to attempting to contact C. Johnson via Facebook. He said he just wanted to say 'hello' and did not meet [sic] any harm by his email attempt. He admitted to agent that it was poor judgment, but believes he did not violate his rules because C. Johnston was no longer a correctional officer or state employee.

(Docket #22-1 at 5). Prior to his release, the plaintiff was made to sign amended rules of probation that expressly stated that he was not to contact employees of the DOC except for supervision-related matters. (Docket #22-1 at 6); (Docket #1 at 3).

The plaintiff states that while he was at MSDF, he was refused showers, hygiene products, clean clothing, and, as the plaintiff states it, the "bare necessities," and was also denied access to writing materials and his prescription medications. (Docket #1 at 5). According to the plaintiff, "[Warden] Husz knew of the violations and allowed them to occur." *Id.*

On February 24, 2015, the Court permitted the plaintiff to proceed on: (1) an Eighth Amendment conditions of confinement claim against Husz; and (2) claims under the First, Fourth, Fifth, and Fourteenth Amendment against Officer Johnston, Captain Bauer, and the DOC Chiefs for violations of his due process rights and retaliating against him for the Facebook post. (Docket #9 at 4).

As stated above, the defendants have moved to dismiss all of the plaintiff's claims. The Court will first discuss the legal standard applicable to the defendants' motion, before turning to the substance of the defendant's arguments for dismissal.

2.   RULE 12(B)(6) MOTIONS TO DISMISS—LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state

Page 4 of 16

Case 2:14-cv-01539-JPS   Filed 07/27/15   Page 4 of 16   Document 26

a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When reviewing a complaint, the Court construes it in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all reasonable inferences in the plaintiff's favor. *See Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 706, 711 (7th Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* — F.3d —, 2015 WL 2151851, at *12 (7th Cir. May 8, 2015) (explaining that a plausible claim need only "'include enough details about the subject-matter of the case to present a story that holds together.'") (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)). Thus, a plausible claim is one with "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556.

To state a plausible claim, a plaintiff is not, however, required to plead specific or detailed facts, *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), nor does the plausibility standard also "impose a probability requirement on plaintiffs: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556); *see Olson v. Champaign Cnty., Ill.*, — F.3d —, 2015 WL 1934388, at *5 (7th Cir. Apr. 30, 2015) ("In deciding or reviewing a Rule 12(b)(6) motion, [courts] do not ask

did these things happen; instead, 'the proper question to ask is still *could* these things have happened.'") (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)) (internal quotation marks omitted).

However, "[i]n reviewing the sufficiency of a complaint under the plausibility standard, [courts]…'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam*, 709 F.3d at 665-66 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)); *see Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (noting that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8").

At bottom, determining whether a plaintiff has alleged a claim upon which relief may be granted "is dependant upon the context of the case and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Camasta*, 761 F.3d at 736 (quoting *Iqbal*, 556 U.S. at 679).

3.  DISCUSSION

To begin, the Court must note that the plaintiff previously filed a lawsuit about the exact same incidents at issue here, albeit against different defendants. *See Cherry v. Dillon*, No. 13-CV-1264 (E.D. Wis.). In his previous lawsuit concerning the Facebook post, the plaintiff named his probation agent (Azael H. Broadhead), that agent's supervisor (Beverly Dillon), and the Wisconsin DOC as defendants. *Id.* Here, the plaintiff has elected to pursue the exact same claims against the DOC Chiefs that ordered him into custody. In his prior suit, the plaintiff also alleged a conditions of confinement claim against Dillon and Broadhead for his treatment at MSDF, *id.*; here, however, he brings that claim against Warden Husz.

The Court dismissed the plaintiff's previous lawsuit just over a year ago (on July 10, 2014), finding that the individual probation defendants were entitled to absolute immunity, and "the same immunity that shield[ed] Dillon and Broadhead for their actions in placing Cherry on [a] probation hold would likewise apply to the other individuals involved, regardless of their job titles, because they served a similar, quasi-judicial function." *Dillon*, No. 13-CV-1264, slip op. at 5 (E.D. Wis. Jul. 10, 2014) (ordering dismissing case). The Court's order also dismissed the Eighth Amendment claim against Dillon and Broadhead because there was no evidence they were responsible for the conditions of the plaintiff's confinement at MSDF and thus the plaintiff failed to state a plausible claim. *Id.* at 5-6.

The Court now turns to the defendant's motion to dismiss (Docket #20). The defendant's motion argues (similar to the previous lawsuit) that: (1) the DOC Chiefs are entitled to absolute immunity for their decision to place a probation hold on the plaintiff because their decision was quasi-judicial; (2) that the plaintiff fails to state a claim against Officer Johnston and Captain Bauer because they did not violate the plaintiff's rights personally or otherwise; and (3) the plaintiff fails to state a claim against Warden Husz for the conditions of his confinement while at MSDF, because the plaintiff has not plausibly pled that Warden Husz was aware of these conditions. The Court will address each of the defendant's arguments in turn.

### 3.1 The DOC Chiefs are Entitled to Absolute Immunity For Ordering That the Plaintiff Be Taken Into Custody

The defendants argue that the DOC Chiefs are entitled to absolute immunity for two reasons. First, the defendants argue that the Court "already ruled that the DOC Chiefs have absolute immunity" in *Cherry v.*

*Dillon*. (Docket #21 at 6) (citing *Dillon*, No. 13-CV-1264, slip op. at 5). Second, the defendants argue that the Seventh Circuit held, in *Smith v. Gomez*, 550 F.3d 613, 617-18 (7th Cir. 2008), that "[p]arole and probation agents, as well as their supervisors, are entitled to absolute judicial immunity for any quasi judicial functions they perform as part of revocation proceedings." (Docket #21 at 6). And thus, because the DOC Chiefs were making a discretionary decision to place a parole hold on the plaintiff, they too are shrouded in absolute immunity.

The plaintiff argues that the DOC Chiefs are not entitled to absolute immunity because he was not on parole, but probation, and *Gomez* merely dealt with the immunity that attaches to parole officials and agents. (Docket #22 at 1-2). In addition, the plaintiff argues, in his surreply, that *Gomez* "does not give defendants absolute immunity for violating plaintiff's rights outside of revocation proceedings." (Docket #25 at 2). Or, to state the plaintiff's argument another way, absolute immunity *only applies* if parole or probation officials are instituting revocation proceedings, but does not attach if they are not.

The Court agrees with the defendants that the DOC Chiefs are entitled to absolute immunity. To begin, *Gomez* supports the defendants' arguments for absolute immunity. There, the Seventh Circuit found that Sussekind—a parole agent's supervisor—was entitled to absolute immunity for the decision "to place a parole hold on Smith." 550 F.3d at 619. The DOC Chiefs' decision to place a probation hold on the defendant appears to fall into the same category. The question is, should the fact that revocation proceedings were instituted in *Gomez* change the outcome? In short, no.

"Absolute immunity for acts by nonjudicial government officers is determined on the basis of 'a functional approach.'" *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996)). The Seventh Circuit has held that "parole officials are entitled to absolute immunity 'for their activities that are analogous to those performed by judges'"; specifically, for example, "acts associated with the decision to grant, revoke, or deny parole, or the signing of an arrest warrant." *Id.* (quoting *Wilson*, 86 F.3d at 1444). The functional approach dictates that the outcome should not be based on the title of the nonjudicial government officer or whether revocation proceedings are ultimately initiated, but solely the role of the official in the process.

That said, neither all parole officials nor all probation officials are entitled to absolute immunity for their actions relating to the supervision and detention of offenders, or the initiation of revocation proceedings against offenders. For example, in *Wilson*, the Seventh Circuit used the "police officer analogy." 86 F.3d at 1446. If the officials acts are analogous to those of a police officer—*i.e.* investigation and reporting on offender conduct—then the official *is not entitled to absolute immunity. Id.* However, if the official is "performing an adjudicative function" like "making a probable cause determination in deciding to issue an arrest warrant based upon evidence gathered by others," the official *is entitled to absolute immunity. Id.* (citing *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994)). All of this should be further qualified, to some extent, by "the usual view that where defendants have similar roles 'their claims of absolute immunity will either stand or fall as a group.'" *Johnson v. Sondalle*, 112 Fed. Appx. 524, 527 (7th Cir. 2004) (quoting *Thompson v. Duke*, 882 F.2d 1180, 1183 n.3 (7th Cir. 1989)).

So, were the DOC Chiefs acting similar to a police officer or a judge, here? The Court believes the latter. The plaintiff alleges that the DOC Chiefs ordered that he be taken into custody for a violation of his probation after being informed of the violation by their subordinates; this sounds quasi-judicial and not investigatory. Namely, the investigatory role was completed by the probation agent and his supervisor, who looked into the incident report filed by Officer Johnston and wrote the investigation report. (*See* Docket #22-1 at 1-6). *See also Wilson*, 86 F.3d at 1446. The DOC Chiefs then ordered the plaintiff into custody based on this information; this is analogous to the parole official signing an arrest warrant in *Walrath*. 35 F.3d at 282. Stated another way, the parole agent and his supervisor, here, conducted the investigation into the plaintiff's violation—and thus were acting like police officers; the DOC Chiefs, however, decided to bring the plaintiff into custody, and thus acted in a quasi-judicial nature by, in essence, issuing a warrant for the plaintiff's arrest after reviewing the charges against him. *See id.* (finding the defendant was entitled to absolute immunity where he did not participate in the gathering of evidence which formed the basis of the arrest warrant, but made a discretionary decision on the basis of…[the] report and the information she obtained…that there was probable cause to believe that

Case 2:14-cv-01539-JPS   Filed 07/27/15   Page 10 of 16   Document 26

Walrath had violated his parole."). Thus, according to *Wilson* and *Walrath*, the DOC Chiefs are entitled to absolute immunity.[5]

### 3.2 The Plaintiff Fails to State a Claim Against Defendants Bausch and Johnston

The plaintiff alleges that, after he sent the Facebook message, Officer Johnston and Captain Bausch retaliated against him for exercising his First Amendment rights, and conspired with the DOC Chiefs to violate his Fourth and Fourteenth Amendment rights. (*See* Docket #22 at 3-4). The defendants argue that the plaintiff fails to state a claim against Officer Johnston and Captain Bausch because: (1) they are not agents of probation and had no control over the decision to bring the plaintiff into custody—which was ordered by the DOC Chiefs; and (2) Officer Johnston and Bausch neither retaliated nor conspired to violate the plaintiff's rights when they filed a truthful incident report describing the events surrounding the plaintiff's Facebook contact with Carrie Johnston. (*See* Docket #24 at 2-3).

The Court agrees with the defendants that the plaintiff fails to state a claim against Officer Johnston and Captain Bausch. To begin, the plaintiff alleges a conspiracy between Officer Johnston, Captain Bausch, and the DOC Chiefs, but fails to describe, with particularity, the who, what, where, and

---

[5]There is, perhaps, another problem with the plaintiff's claim: that he may not have a conceivable claim for relief (under the Fourth or Fourteenth Amendment), regardless. The plaintiff has not offered any evidence that the DOC did not act "consistent[] with the governing statutes and its own regulations." *See Sondalle*, 112 Fed. Appx. at 528. The plaintiff's status as a probationer made him subject to those regulations and the process afforded to him by those regulations, *see* Wis. Stat. § 973.10 . *See Sondalle*, 112 Fed. Appx. at 527. Thus, because he could be held for five working days pending an investigation into a potential probation violation, *see* Wis. Admin. Code §§ 328.27(2)(a) and 3(a), and these matters are "within the province of the DOC," *see Sondalle*, 112 Fed. Appx. at 527, it is unlikely that the plaintiff actually states a claim for the actions of the DOC Chiefs.

when of this conspiracy. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("…bare assertion[s] of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Adamski v. McGinnis*, No. 13-CV-962, 2015 WL 1467818, at *5 (E.D. Wis. Mar. 30, 2015) (noting that conspiracy allegations must fail when they are "threadbare, wholly conclusory, and based on a dearth of facts"). Indeed, the DOC Chiefs are mentioned by the plaintiff as having ordered him detained, but nowhere does the plaintiff allege that the DOC Chiefs communicated with, or even knew, for that matter, Officer Johnston and Captain Bausch. This is not enough to sustain a conspiracy claim.

Neither has the plaintiff plead a plausible retaliation claim against Officer Johnston and Captain Bausch. While it is true, *presumably*, that the plaintiff was engaging in First Amendment activity when he communicated with Carrie Johnston, and the incident report filed by Officer Johnston (and run up the chain by Captain Bausch) might have chilled such further activity, *see Perez v. Fenoglio*, — F.3d —, 2015 WL 4092294, at *10 (7th Cir. July 7, 2015) (describing the elements of a First Amendment relation claim), the problem with the plaintiff's claim is that he does not plausibly allege retaliatory animus, *see Murphy v Lane*, 833 F.2d 106, 108-109 (7th Cir. 1987). There is simply nothing in the plaintiff's complaint—other than conclusory allegations—that would lead to a reasonable inference that Officer Johnston or Captain Bausch *intended* to retaliate against the plaintiff for his Facebook post.

Of course, intent is hard to plead, *see Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (stating that "the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint"), and thus "courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred," *id. See also Adell v. Smith*, 248 F.3d 1156, 2000 WL 1875738, at *3 (7th Cir. 2000) ("A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'") (quoting *Caine v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988)). However, the plaintiff cannot satisfy this chronology-based-inference standard either. A correctional officer's decision to file a truthful report that accurately described the events that occurred—indeed, the plaintiff does not allege that the report was inaccurate or substantively untruthful[6]—concerning an incident that he perceived as "a potential threat" to his family, does not allow a plausible inference of retaliation.[7] Had the plaintiff alleged that the report was substantively *untruthful*, *cf. Wolf–Lillie v,*

---

[6]The plaintiff argues that Officer Johnston lied when he stated on the incident report that a "discharge/release inmate attempted to contact correctional staff," (*see* Docket #22-1 at 2), because Carrie Johnston was no longer a correctional officer. But numerous times in the attached statement, he notes that she *was not* a current correctional officer, *see id.* at 3 ("Carrie had resigned from state service 5 years ago…"); indeed, on the same incident report he refers to her as "citizen/spouse of staff." *Id.* The plaintiff's non-substantive allegation of falsity falls woefully short.

[7]A different way to state this is that Officer Johnston and Captain Bausch did not "exaggerate[] their response to preserving [a] legitimate penological objective[] of the prison environment," *Bridges v. Gilbert*, 557 F.3d 541, 548 (7th Cir. 2009)—the safety of correctional officers and their family members. *Cf. id.* ("Legitimate penological objectives include crime deterrence, prisoner rehabilitation, and internal prison security.").

*Sondquist,* 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and *predicated upon fault.*") (emphasis added), the Court would certainly reach a different conclusion; but he did not.[8]

Even were the Court to find that retaliatory intent could be inferred—which, to be clear, the Court does not—the Court would likely still find the defendant failed to state a retaliation claim. This is so because the alleged deprivation of the plaintiff's rights—*i.e* his seven-day detention—was not, in the Court's view, *proximately caused* by Officer Johnston's and Captain Bausch's actions. To wit, the decision to place the defendant in custody was a discretionary decision made by the DOC Chiefs that was not compelled by the filing of the incident report. Stated another way, *the DOC Chiefs' independent decision* to detain the plaintiff after the probation officials' investigation of the matter chops off at the knees the necessary causation component of the plaintiff's retaliation claim. Regardless, the plaintiff's claims against Officer Johnston and Captain Bausch fail for all of the reasons noted above.

  3.3  The Plaintiff Fails to State a Claim Against Defendant Husz

Lastly, the plaintiff alleges that Warden Husz "knew" of the alleged conditions of his confinement—that he was not provided with his medication, showers, clean clothing, clean bedding, hygiene products, or writing materials. (*See* Docket #1 at 5, 7). The defendant argues that the plaintiff fails to state a claim against Warden Husz "because [the plaintiff]

---

[8]It is worth noting, in this regard, that the plaintiff admitted to sending the Facebook message and also "admitted to the agent that it was poor judgment." (*See* Docket #22-1 at 5).

does not allege any non-conclusory facts that create a plausible inference that Warden Hunz [sic] violated his constitutional rights." (Docket #24 at 4). The Court agrees.

All that the plaintiff alleges in his complaint is that "Defendant Husz knew of the violations [during his confinement] and allowed them to occur." (Docket #1 at 5). This conclusory allegation is insufficient; "*respondeat superior* does not apply to § 1983 actions" and thus "to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001)). Supervisors may also be liable for "deliberate, reckless indifference" to the misconduct of subordinates if those supervisors "know about the conduct and facilitate it, approve of it, condone it, or turn a blind eye for fear of what they might see." *Chavez*, 251 F.3d at 651 (quotations omitted). Here, the plaintiff's single sentence, conclusory allegation of Warden Husz's knowledge is insufficient to raise a plausible inference that he should be held liable personally, or in his supervisory capacity, for the conditions of the plaintiff's confinement. Therefore, the plaintiff fails to state a claim against Warden Husz.

4. CONCLUSION

In light of the foregoing, the Court is obliged to grant the defendants' motion to dismiss (Docket #20). Because the DOC Chiefs are entitled to absolute immunity, the plaintiff's claims against them will be dismissed with prejudice. *See Dawson*, 419 F.3d at 662 (affirming dismissal with prejudice of claims against judge entitled to absolute immunity). Because the Court found that the plaintiff failed to plausibly plead his claims against Officer Johnston,

Captain Bausch, and Warden Husz, which is a Federal Rule Civil Procedure 8(a) issue, the Court will dismiss these claims without prejudice. *See Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 336-37 (7th Cir. 2015); *Paul v. Marberry*, 658 F.3d 702, 704-05 (7th Cir. 2011).

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (Docket #20) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the plaintiff's claims against the DOC Chiefs be and the same are hereby DISMISSED with prejudice; and

IT IS FURTHER ORDERED that the plaintiff's claims against Officer Johnston, Captain Bausch, and Warden Husz be and the same are hereby DISMISSED without prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of July, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge